**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HASSAN ALI, | ) | CASE NO. 1:23-CV-00157 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## I.      Introduction

Now pending is Plaintiff Hassan Ali's (Plaintiff) Amended Complaint. (R. 19). Plaintiff

raises the following claims: (1) discrimination through disparate treatment and a hostile work

environment based on religion and national origin/ancestry against the City of Cleveland,

Defendant George Kwan, and John Doe No. 1 in violation of Ohio Revised Code (O.R.C.) §

4112 for conduct occurring on or before November 5, 2020; (2) retaliation and hostile work

environment based on retaliation against Defendants Cleveland, Lt. Farmer, Sgt. Lentz, Sgt.

Pesta and John Doe No. 2 in violation of O.R.C. § 4112 for conduct that occurred on or before

April 15, 2021; (3) discrimination through disparate treatment, interference with religion and a

hostile work environment against Defendants Cleveland, Chief Drummond, Commander Stacho,

Captain Hamm, Lt. Farmer, Sgt. Pesta, Sgt. Lentz and John Doe No. 2 in violation of Title VII

and O.R.C. § 4112 for the conduct occurring on or after September 2, 2021; (4) retaliation and

hostile work environment based on retaliation against the City of Cleveland in violation of Title

VII and O.R.C. § 4112 against Defendants Drummond, Stacho, Hamm, Farmer, Pesta, Lentz, Mussell, John Doe No. 3, and Safety Director Howard for conduct occurring between September 2, 2021 through July 21, 2022; (5) civil liability for a criminal act—interfering with civil, constitutional and statutory Rights—in violation of O.R.C. § 2307.60 and O.R.C. § 2921.45 against Defendants Drummond, Stacho, Hamm, Farmer, Pesta, Lentz, Mussell, John Doe No. 3, and Howard; and (6) discrimination in violation of 42 U.S.C. §§ 1981 and 1983 against Defendants Cleveland, Drummond, Stacho, Hamm, Farmer, Pesta, Lentz, John Doe No 2, Mussell, John Doe No. 3, and Director Howard. (R. 19).

Defendant Kwan, through counsel, filed a Motion for Judgment on the Pleadings. (R. 23). On the same day, Defendant City of Cleveland and the remaining named individual Defendants ("City Defendants") also filed a Motion for Judgment on the Pleadings. (R. 22).[1] Plaintiff requested two extensions of time to file his brief in opposition, which the Court granted. (R. 24 & 25). In lieu of filing an opposition, Plaintiff filed a second Motion for Leave to Amend the Complaint. (R. 26). In addition, Plaintiff filed a third motion for extension of time to file his brief in opposition. (R. 27). Thereafter, Plaintiff filed a combined brief in opposition. (R. 33). Defendant Kwan and the City Defendants filed replies in support of their Motions for Judgment on the Pleadings. (R. 34 & 35). Plaintiff filed a surreply. (R. 36). For the reasons stated below, the Court defers consideration of Defendant Kwan's Motion for Judgment on the Pleadings as it involves purely state law issues ripe for consideration upon remand as further explained herein. (R. 23). The Court GRANTS the City Defendants' Motion (R. 22) and DENIES Plaintiff's

---

[1] Defendants had filed motions for judgment on the pleadings with respect to the original Complaint as well, but they were denied without prejudice as moot because Plaintiff responded by filing the Amended Complaint. (R. 15 & 16).

second Motion for Leave to Amend (R. 26).

## II.    Judgment on the Pleadings Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such motions are assessed "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." See *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (quoting *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)); *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017). As explained by the Court of Appeals:

> A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6). *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). A court evaluating that type of motion thus must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). *See Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). Courts must accept as true all well-pleaded factual allegations, **but they need not accept legal conclusions**. *Iqbal*, 556 U.S. at 678. And the well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." *Id*. at 679. Pleaded facts will do so if they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Pleaded facts will not do so if they "are 'merely consistent with' a defendant's liability." *Id*. (*quoting Twombly*, 550 U.S. at 557).

*Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (emphasis added).

Federal courts must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences in [the plaintiff's] favor." *Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021) (citations omitted). Nevertheless, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677–78 (internal

citations omitted)

### III.    Factual Allegations

#### A.    Plaintiff is hired by the Cleveland Police Department

Plaintiff's allegations stem from his brief employment with the Cleveland Police Department (CPD). (*See generally* R. 19). Plaintiff was hired by the CPD in January 2020 and began attending its police academy at the end of January 2020. *Id.* at PageID# 389, ¶25. While Plaintiff was a cadet, he learned he was being investigated by the Cleveland Heights Police Department ("CHPD") for potential criminal violations. *Id.* at ¶26.[2]

In June of 2020, Plaintiff's training was transferred to the Cleveland Justice Center where he was under the instruction of Defendant Kwan (and John Doe No. 1) from June 2020 until November 5, 2020. *Id.* at PageID 390, ¶7. Plaintiff alleges Defendant Kwan created a hostile work environment by subjecting Plaintiff to frequent disparaging comments based on stereotypes of his Middle Eastern descent and/or Muslim religion. *Id.* at ¶27. Plaintiff also asserts he was treated more harshly than cadets who were not Middle Eastern and/or Muslim. *Id.* Plaintiff reported Defendant Kwan's conduct and CPD began an investigation, but Defendant Kwan retired before the investigation into his conduct concluded. (R. 19, PageID# 391, ¶30).

Following graduation, Plaintiff was assigned to the night shift where he states he had the reputation of being a "snitch" due to his complaint against Kwan. *Id.* at PageID# 392, ¶33. Plaintiff characterized his work environment as hostile and retaliatory because his coworkers allegedly stated he had a target on his back and a "hall file." *Id.* at PageID# 392, ¶¶33-34.

---

[2] While Plaintiff alleges he did not perform the alleged criminal acts, only well-pleaded allegations must be accepted as true.

Plaintiff alleges Defendants Farmer, Lentz, Pesta, and John Doe No. 2 "knew or should have known" about the hostility and retaliation directed towards Plaintiff, but did nothing to stop it. (R. 19, PageID# 392, ¶35).

**B.  Plaintiff's requests to grow a beard**

Plaintiff avers that he wanted to grow a beard "to practice his religious beliefs." (R. 19, PageID# 393, ¶39).[3] Over a year and a half later, in September of 2021, Plaintiff again requested to grow a beard, this time he directed his request to Defendants Lentz, Pesta, and Farmer. *Id*. at ¶42. "Defendant Farmer instructed Plaintiff that the ability to grow a beard violated CPD policy, and that he would have to request an exemption under the CPD policy in writing." (R. 19, PageID# 394, ¶42). On or about September 2, 2021, Plaintiff submitted a written request to CPD Lt. Maffo-Judd (who is not a defendant) for an exemption to grow a beard to practice his religious beliefs, and Lt. Maffo-Judd requested direction from Defendant Chief Drummond. *Id*. at ¶44. The next day, Plaintiff's request was denied by Defendant Captain Hamm. *Id*. at ¶ 45. Plaintiff maintains that his request for an exemption should have been "processed" to Chief Drummond before being denied. *Id*. On or about September 26, 2021, Plaintiff requested in writing that a change or amendment to the CPD policy against beards be enacted so he could practice his religion. (R. 19, PageID# 395, ¶47). "On information and belief this request was directed through his supervisors to Defendant Commander Stacho and Defendant Chief Drummond." *Id*. His request was never addressed. (R. 19, PageID# 396, ¶52).

In April 2022, Plaintiff grew a beard, which he states was a way to practice his religious

---

[3] The Amended Complaint asserts that Plaintiff wanted to grow a beard when he was hired, but was denied. Plaintiff does not identify whom he asked or when, but states that his request was denied. *Id*.

beliefs during Ramadan, a Muslim holiday occurring that month. (R. 19, PageID# 397, ¶56). When Plaintiff was told to shave his beard, he complied for fear that he would lose his job, but protested the policy violated his religious beliefs. *Id.* at PageID# 397, ¶¶57, 59. Plaintiff contends he contacted the EEOC on April 12, 2022. (R. 19, PageID# 399, ¶64). He, however, did not actually file a charge until July of 2022, after he had resigned. *Id.*

**C.  Allegations of Misconduct Against Plaintiff and His Subsequent Resignation**

As referenced *supra*, while Plaintiff was still a cadet, he learned he was being investigated by the Cleveland Heights Police Department. (R. 19, PageID# 389, ¶26). Plaintiff also became aware he was under investigation by the Internal Affairs Department (IAD), on or about April 17, 2022. (R. 19, PageID# 399, ¶66).

On July 15, 2022, the Department of Public Safety sent Plaintiff a "*Loudermill* letter" informing him of a pre-disciplinary hearing scheduled for July 22, 2022. (R. 22-2, PageID# 500, Exh. A). Without going into great details of the letter's specifications, Plaintiff was accused of sending text messages to a former girlfriend, along with images of her in a state of nudity, and threatening to publish a video of her engaged in a sexual act if she did not obtain an abortion. *Id.* at PageID# 500-501. He was further accused of using an app called *textPlus* to send the message on an FBI issued device, and being untruthful with Internal Affairs investigators in his answers during the course of an interview. *Id*. at PageID# 500-502. The *Loudermill* letter suggested that Plaintiff's alleged actions violated numerous policies as well as O.R.C. § 2917.211. *Id.*

The Complaint alleges Plaintiff did not receive the pre-disciplinary *Loudermill* letter until July 21, 2022. (R. 19, PageID# 400, ¶68). Plaintiff resigned the same day. (R. 19, at PageID# 400, PageID# 71).

Plaintiff asserts the investigation was "pretextual and retaliatory" and the "investigation

6

itself constituted an adverse employment action." (R. 19, PageID# 396, ¶51).[4]

It does not appear that Plaintiff attended the hearing scheduled for July 22, 2022.

## IV.    Analysis

### A.    Count Six: § 1981

In Count Six of the Amended Complaint, Plaintiff alleges discrimination "in violation of

42 U.S.C. §§ 1981 and 1983 against Defendants City of Cleveland, Chief/Acting Chief

Drummond, Commander Stacho, Captain Hamm, Lt. Farmer, Sgt. Pesta, Sgt. Lentz, John Doe

No 2, Sgt. Mussell, John Doe No. 3, and Safety Director Howard" but not against Defendant

Kwan. (R. 19, PageID# 410). To the extent Count Six seeks to maintain a cause of action

pursuant to § 1981, the City Defendants assert that such a claim is not viable against state actors.

(R. 22-1, PageID# 492).

The Sixth Circuit Court of Appeals has held that "no independent cause of action against

municipalities is created by § 1981(c)." *Speed Way Transportation, LLC v. City of Gahanna,*

*Ohio*, No. 21-3657, 2023 WL 2293099, at *8 (6th Cir. Mar. 1, 2023) (*quoting Arendale v. City of*

*Memphis*, 519 F.3d 587, 599 (6th Cir. 2008)). Section 1983 "provides the exclusive federal

damages remedy for the violation of the rights guaranteed by § 1981" for suits against state

actors in their official and individual capacities. *Id*. (*quoting Grinter v. Knight*, 532 F.3d 567,

576–77 (6th Cir. 2008) (official capacity suits)); *McCormick v. Miami Univ.*, 693 F.3d 654, 660

---

[4] The Court does not construe the allegation that the investigation was pretextual or itself
an adverse action as true, as it is not a factual allegation, but merely a legal conclusion
and/or naked assertions devoid of any further supporting factual averments. *See, e.g.,*
*Stone v. Good Old Boys Domestic Terrorists' Org*., No. 5:23-CV-P139-JHM, 2025 WL
1262061, at *3 (W.D. Ky. May 1, 2025) (dismissing action where plaintiff's "allegations
suggesting a conspiracy between Defendants are non-specific, vague, and conclusory"
and "allege[d] no *facts* that indicate the existence of a plan, much less that any Defendant
shared a conspiratorial objective.")

(6th Cir. 2012) (individual capacity suits)).

Plaintiff's opposition brief is largely unresponsive to this argument. (R. 33, PageID# 785). To the extent Count Six is attempting to pursue a cause of action against the Defendants under § 1981, that claim is dismissed.

**B.    Unexhausted Title VII Claims in Counts Three and Four**

Title VII and Ohio law[5] require a claimant to exhaust their administrative remedies before filing suit. The City Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to any Title VII claims except those stemming from religion or retaliation. (R. 22-1, PageID# 479-480).

On July 23, 2022, one day after the pre-disciplinary hearing scheduled for July 22, 2022, Plaintiff filed a Charge of Discrimination with the Ohio Civil Rights Commission. (R. 21-1, PageID# 461, Exh. A). The charge, in its entirety, states as follows:

> I was hired by the Respondent on January 27, 2020, and my most recent position title was Police Officer Patrolman. In September of 2021, I submitted a request for a religious accommodation and did not receive a response. On April 2, 2022, I started growing facial hair in honor of Ramadan. On April 9, 2022, Sgt. Pesta ordered me to shave my beard and indicated that I had until the following day to shave before being written up on charges for violating the grooming standards policy. Due to my fear of being issued a disciplinary action, I complied and shaved my beard despite it being against my religion. I informed the Respondent officials that my civil rights were being violated and complained internally. Shortly thereafter, I began to be scrutinized and threatened with disciplinary actions which led to my forced resignation on July 21, 2022. I believe I have been discriminated against because of my religion, Muslim, and in retaliation for my protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII).

---

[5] O.R.C. § § 4112.052 amended Ohio law to require a person to first file a charge with the Ohio civil rights commission with respect to the practice complained of in the complaint before filing suit. There is some debate as to whether ELUA applies to claims accruing before its effective date of April 15, 2021. *See, e.g., Lampkin v. Silver Line Bldg. Prods.*, LLC, No. 3:22-CV-1810, 2025 WL 959451, at *3 (N.D. Ohio Mar. 31, 2025). The Court, however, need not resolve this issue as the state law claims are remanded to state court for the reasons set forth herein.

(R. 21-1, PageID# 461, Exh. A).

Defendants are correct that before filing suit in federal court, Title VII plaintiffs must first exhaust their administrative remedies by filing a charge of discrimination with the EEOC and receiving a right-to-sue letter. *Alexander v. Univ. of Memphis*, No. 20-5426, 2021 WL 2579973, at *3 (6th Cir. June 7, 2021) (*citing Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018)). However, the EEOC exhaustion requirement is not jurisdictional, but instead "it is a claim-processing rule." *Id*. (*citing George v. Youngstown State Univ.*, 966 F.3d 446, 469 (6th Cir. 2020); *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 855–56 (6th Cir. 2013)). Nevertheless, "a claim-processing rule must be enforced if properly raised by the employer, as the University did in this case." *Id*. (*citing Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)).

Furthermore, the Sixth Circuit Court of Appeals has explained as follows:

> "As a general rule, a Title VII **plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge**." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). A plaintiff's EEOC charge "must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' " *Id*. (quoting 29 C.F.R. § 1601.12(b)). But because employees typically file EEOC charges without the benefit of legal assistance, "their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. at 362. The district court correctly recognized that the box that the plaintiff checked on the EEOC complaint form is not dispositive as to the scope of her charge. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379–80 (6th Cir. 2002). But here, Alexander not only failed to indicate that she was asserting a race-discrimination charge against the University, but neither of her EEOC charges contained factual allegations that supported a claim of racial discrimination.

*Alexander,* 2021 WL 2579973, at *4 (emphasis added).

The EEOC charges, reproduced verbatim above, did not identify any national origin or

ancestry-based discrimination, disparate treatment complaints, nor did it complain of a hostile

work environment. (R. 21-1, PageID# 461, Exh. A).

Plaintiff's brief in opposition is unresponsive to the argument that the national

origin/ancestry claims were not raised in his EEOC charge other than to state that there were no

boxes to check on the form. (R. 33, PageID# 756). Plaintiff is correct that a failure to check

boxes on an EEOC complaint form is not necessarily dispositive as to the scope of a charge.

Nevertheless, in *Alexander*, 2021 WL 2579973 at *4, the Sixth Circuit found it significant that

the plaintiff Alexander not only failed to assert a race-discrimination charge, but none of her

charges contained factual allegations supporting a claim of racial discrimination. Similarly here,

Plaintiff's EEOC filing is completely bereft of any national origin/ancestry based charges. As

such, his claims based on national origin/ancestry discrimination are dismissed as unexhausted.[6]

Turning to the hostile environment and disparate treatment claims, a claim is reasonably

related to an EEOC charge "when it falls within the scope of that charge or includes language

that would have put the EEOC or the employer *on notice* that [the employee] was alleging that

claim." *Santiago v. Meyer Tool Inc.*, 2023 WL 3886405, 2023 U.S. App. LEXIS 14469, at *28

(6th Cir. June 8, 2023) (citations omitted). Plaintiff makes the conclusory assertion that one can

infer the hostility in his workplace from the charges. (R. 33, PageID# 758). The Court disagrees.

Further, Plaintiff conflates hostile work environment with retaliation. *Id*. While his EEOC charge

alleged he was scrutinized and threatened with disciplinary actions for making his request,

allegations that support a possible retaliation claim, neither the EEOC nor an employer could be

---

[6] Despite explicitly referencing national origin discrimination in Counts One, Two, Five, and
Six, Plaintiff's opposition confusingly claims that discrimination based on his national origin are
not included in these Counts. (R. 33, PageID# 757, n. 21).

reasonably construed as having been put on notice of a hostile work environment claim.[7]  As such, the hostile work environment claims set forth in the Amended Complaint do not reasonably grow out of or relate to the charges set forth in the EEOC charge.

Therefore, the Court finds Counts Three and Four are subject to dismissal based on lack of exhaustion to the extent they raise hostile work environment claims.

**C.      Adverse Employment Action and Constructive Discharge**

"Title VII makes it unlawful for an employer to 'discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's religion.'" *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994) (quoting 42 U.S.C. § 2000e–2(a)(1), internal alterations omitted); *accord Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 633 (6th Cir. 2003); *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002).

To establish a claim for religious-based Title VII discrimination as alleged in Count Three and Title VII retaliation as alleged in Count Four, Plaintiff must show that he suffered an adverse employment action. "The employee bears the burden of establishing a prima facie case". *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994) (*citing Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987), *cert. denied*, 485 U.S. 989 (1988)). "The elements of a retaliation claim are similar but distinct from those of a discrimination claim," but still requires a

---

[7] "To bring a cause of action under Title VII for a hostile work environment, [a plaintiff] must show that: 1) he was a member of a protected class; 2) he was subjected to unwelcome harassment; 3) that harassment was based on his protected-class status; (4) the harassment created a hostile work environment; and (5) employer liability." *Wehrly v. Allstate Ins. Co.*, No. 23-5736, 2024 U.S. App. LEXIS 7378, at *8 (6th Cir. Mar. 27, 2024) (citing *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021)). Plaintiff's EEOC charge does not identify harassment based on his religion or any other protected status.

showing of an action by the employer that was "materially adverse" to the plaintiff. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

In other words, Plaintiff must show that there was a "materially adverse change in the terms and conditions of [his] employment." *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (*quoting White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)). In the discrimination context, an adverse action usually "inflicts direct economic harm." *Erwin v. Honda N. Am., Inc.*, 2023 WL 3035355, 2023 U.S. App. LEXIS 9618, at *5 (6th Cir. Apr. 21, 2023) (*citing Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)). The adverse action must constitute more than a "mere inconvenience or an alteration of job responsibilities." *Erwin*, 2023 U.S. App. LEXIS 9618, at *5 (*citing Deleon*, 739 F.3d at 918 (citation omitted)); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("petty slights, minor annoyances, and simple lack of good manners" are normally not enough).

> [I]n the retaliation context, adverse employment actions encompass any conduct that would have "dissuaded a reasonable worker from making or supporting [an FMLA claim]." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 616-17 (6th Cir. 2019) (quoting *Burlington N.*, 548 U.S. at 68). The showing required in a retaliation case is less burdensome than in a discrimination case. *Id.* at 614; *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569-70 (6th Cir. 2019). Nevertheless, de minimis employment actions are not materially adverse for purposes of either claim. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (citing *Jacklyn v. Schering-Plough HealthCare Prods. Sales Corp.*, 176 F.3d 921, 930 (6th Cir. 1999) (finding as to the plaintiff's retaliation claim that "requiring plaintiff to work at home while she was recovering from out-patient surgery" was not a materially adverse employment action)).

*Erwin*, 2023 U.S. App. LEXIS 9618 at **5-6 (alteration in the original).

### 1. Investigations and Constructive Discharge

Plaintiff has also alleged that the Internal Affairs investigation into the allegations that he threatened an ex-girlfriend constituted an adverse employment action. (R. 19, PageID# 396,

¶51). This allegation is nothing more than a legal conclusion couched as a factual assertion. Plaintiff labeling the investigation as "pretextual and retaliatory," without enhancing factual averments, is more of the same. *Id*. Generally, Plaintiff's assertions in the Amended Complaint are replete with vague, conclusory, legal assertions and naked assertions that lack the benefit of factual statements to support them. Plaintiff, for example, avers that the criminal investigation initiated by a different police department than the CPD was "false" with "no basis in fact." (R. 19, PageID# 389, ¶26). This is not the kind of averment that must be taken as true. *See, e.g.*, *Sunrise Pharm., Inc. v. Vision Pharma*, LLC, 799 F. App'x 141, 142 (3d Cir. 2020) (finding that a plaintiff's allegation that the defendant made false statements is a "naked assertion[] devoid of further factual enhancement" and insufficient to survive a motion to dismiss).

The Amended Complaint, while acknowledging Plaintiff resigned his employment, asserts that Plaintiff was constructively discharged. (R. 19, PageID# 399, 401, 405, 406-407, ¶¶64, 72-73, 92, 94, 101, 103). The assertion that one has been constructively discharged, without more, is not a factual averment but a legal conclusion not entitled to any weight when addressing a motion to dismiss. Legal conclusions that merely "restate[] the standard" are insufficient. *Doe v. Ferguson*, 128 F.4th 727, 735 (5th Cir. 2025) (citations omitted).

> A constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). To succeed, an employee must also show that the employer intended to oust him. *Id*. In other words, the employer must have created an objectively intolerable work environment to deliberately force [an] employee to resign. *See Agnew v. BASF Corp.*, 286 F.3d 307, 309–10 (6th Cir. 2002). Otherwise the employer did not commit constructive discharge.

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020); *accord Cox v. Hausmann*, No. 3:17-CV-02420, 2020 WL 5814476, at *5 (N.D. Ohio Sept. 30, 2020).

13

Employer investigations are not typically considered adverse actions. *See, e.g.,* *Raboczkay v. City of Taylor*, 2020 WL 1873327, 2020 U.S. Dist. LEXIS 65945, *13 (E.D. Mich., Apr. 15, 2020) (*citing Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004)); *Batchelor v. City of Wilson*, 747 F. Supp. 3d 845, 860 (E.D.N.C. 2024) (finding a plaintiff did not plausibly allege an adverse employment action stemming from an investigation where no facts were alleged showing harm to "an identifiable term or condition of employment."); *Mulgrew v. Prince William Cty. Sch. Bd.*, 2023 WL 7222108, 2023 U.S. Dist. LEXIS 197399, at *9 (E.D. Va. Nov. 2, 2023) (finding plaintiff "fail[ed] to allege a cognizable adverse action" where he was placed on paid administrative leave pending an investigation into his conduct and noting that "courts have held that placing an individual on paid administrative leave does not constitute an adverse employment action in the discrimination context or in the retaliation context"); *Sullivan v. Ohio State Univ.*, 2024 WL 5683374, 2024 U.S. Dist. LEXIS 243728, at *4 n.3 (S.D. Ohio June 17, 2024) (finding that plaintiff's argument—that the investigation was an adverse action—failed to state a claim, and assuming *arguendo* that an investigation could be an adverse action, plaintiff's generalized, conclusory allegations were insufficient); *Irving v. Carr*, 2019 WL 4929044, 2019 U.S. Dist. LEXIS 173325, at *25 (S.D. Ohio Oct. 7, 2019) ("Various courts have concluded that neither the mere 'commencement of an investigation' nor 'criticisms, accusations, threats, or bad mouthing are . . . enough' to constitute an 'adverse action.'")

To the extent Plaintiff suggests the investigation into his alleged misconduct was instigated in bad faith or suggests the allegations against him as set forth in the *Loudermilk* letter were contrived and a deceptive or conspiratorial effort by the various Defendants to retaliate against him, the Amended Complaint is devoid of any allegations to support such factual inferences. A court "is neither bound by the plaintiff's legal characterization of the facts, nor

14

required to ignore facts set forth in the complaint that undermine the plaintiff's claims." *Doe v. Toys R Us*, No. 10 CV 2116, 2010 U.S. Dist. LEXIS 79916, at *5-6 (N.D. Ill. Aug. 5, 2010) (*citing Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992)). "Plaintiff's own 'subjective beliefs as to the motivation of others are insufficient' to meet his burden" to plead a plausible cause of action. *Mahmood Husam Altabra v. Univ. of Tex. at Austin*, 2024 U.S. Dist. LEXIS 41380, at *17 (W.D. Tex. Mar. 7, 2024) (*citing Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022)).

To the extent Plaintiff alleges that Defendants engaged in fraudulent conduct by inventing the very detailed allegations against him in the *Loudermill* letter—the accusation of sending text messages to a former girlfriend, along with images of her in a state of nudity and threatening to disclose images to her employer, the means by which they were sent (an app called *textPlus*), and using an FBI issued device to send/access the same—such allegations would need to satisfy the heightened pleadings standards of Fed. R. Civ. P. 9(b). "Rule 9(b) applies where a claim is 'grounded in fraud' or 'sound[s] in fraud,' *even if fraud is not an essential element of the cause of action.*" *Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.)*, 58 F.4th 1048, 1057 (9th Cir. 2023) ("In other words, if 'a plaintiff . . . choose[s] . . . to allege in the complaint that the defendant has engaged in fraudulent conduct,' then 'the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).'") (emphasis added) (*citing Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)); *accord In re GM ERISA Litig.*, No. 05-71085, 2006 U.S. Dist. LEXIS 16782, at *50-51 (E.D. Mich. Apr. 6, 2006) ("This Court finds *Vess* persuasive as well, and agrees that the rationale behind Rule 9(b) applies where a plaintiff alleges that a defendant has lied…."); *see also Kolominsky v. Root, Inc.*, 100 F.4th 675, 684 (6th Cir. 2024) (finding that where a theory of fraud

permeates the complaint, a fraud disclaimer will not defeat the assumption that the pleadings in the action sound in fraud and the 9(b) standard applies). Further, an Eastern District of Missouri court found that a complaint was "devoid of factual allegations supporting the conclusory claim that Officer Rauss knew [an] allegation was false. Without any such allegations, Plaintiff has failed to plausibly allege that Officer Rauss was personally involved in, or directly responsible for, any deprivation of Plaintiff's constitutional rights." *Bell v. City of Bourbon*, No. 4:23-cv-01318-SEP, 2025 U.S. Dist. LEXIS 60938, at *12 (E.D. Mo. Mar. 31, 2025).

Plaintiff's simple denial or characterization of the allegations against him as false do not satisfy the particularity requirements of Rule 9(b). Even if the particularity requirements did not apply, the allegations in the Amended Complaint contain no facts—only naked assertions—that if construed as true, could show the investigation was a sham.[8]

Finally, although Plaintiff assertions that the pre-disciplinary letter can be construed as a foregone conclusion that Plaintiff would be terminated, such contention is not a factual averment, but merely his own subjective interpretation. Plaintiff labelling the investigation as retaliatory or pretextual does not make it so. As such, it does not furnish the basis for a constructive discharge.

The pre-disciplinary hearing letter contains ten specifications detailing Plaintiff's alleged responses to questioning, as well as the regulations or laws that Plaintiff potentially violated, and the potential consequences, which included suspension, loss of pay, demotion, or termination. (R. 22-2, PageID# 500-501). Based on an objective reading of the letter, it indicated that these

---

[8] The Court is not referring to the motivations behind the investigation, but the results. Moreover, the Court need not, and does not, decide whether the allegations in the *Loudermill* letter were true, false, partially true, or partially false. However, the Court need not accept Plaintiff's unsupported assertions that the investigation and the fruits thereof were false.

consequences could ensue if the specifications were determined to be true. The hearing was Plaintiff's opportunity to challenge them, but he opted to resign.

Moreover, even if the letter could be construed as a "threat," there is ample law that "unfulfilled threats are not materially adverse actions for the purpose of a Title VII retaliation claim." *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 697 (7th Cir. 2017) (citations omitted); *McMinimee v. Yakima Sch. Dist. No. 7*, No. 1:18-CV-3073-TOR, 2021 WL 1559369, at *12 (E.D. Wash. Mar. 26, 2021) ("the *Loudermill* notice itself does not constitute an adverse employment action").

### 2. "Hall File" or "Snitch" Allegations By Peers

Plaintiff has alleged that his co-workers—not his supervisors—referred to him as a snitch, and told Plaintiff that he had a "target on his back" due to his complaints concerning Defendant Kwan. (R. 19, PageID# 392, ¶¶33-34). He further alleges the existence of a so-called "hall file," which he describes as an unofficial account of his reputation among his co-workers. *Id*. To the extent Plaintiff avers that these actions caused a constructive discharge, the Court finds these are not the kind of conditions that would cause a reasonable person in the employee's shoes to feel compelled to resign. Furthermore, an employee must also show that the employer intended to oust him, and none of Plaintiff's allegations indicate that his supervisors instigated said behavior.

Moreover, as explained by the Supreme Court, "material adversity" must be separated from "trivial harms," as "Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (*citing Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). The Supreme Court cautioned that

17

"[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*; *Irving*, 2019 U.S. Dist. LEXIS 173325, at *25 ("Various courts have concluded that neither the mere 'commencement of an investigation' nor 'criticisms, accusations, threats, or bad mouthing are . . . enough' to constitute an 'adverse action.'"); *Magley v. Wright*, 2019 WL 4929044, 2001 U.S. Dist. LEXIS 4612, 2001 WL 36126924, at *19 (W.D. Mich. Mar. 30, 2001) (collecting cases)).

The Court finds that Plaintiff has failed to plausibly allege that he suffered a materially adverse action. His conclusory and unsupported allegations of constructive discharge are insufficient. Because a materially adverse action is a requisite element of a Title VII discrimination as well as a Title VII retaliation claim, the federal claims in Counts Three and Four are hereby dismissed.

### D.    Count Six: § 1983

In Count Six of the Amended Complaint, Plaintiff alleges federal law claims of discrimination based on his religion in violation of 42 U.S.C § 1983 against the City Defendants. (R. 19, PageID# 410).[9] Specifically, Plaintiff asserts a violation of the Equal Protection Clause. (R. 19, PageID# 410, ¶¶120-121). Plaintiff's theory is that he "was treated differently than other, similarly situated non-Muslim officers in the CPD who were not affected in the free practice of their religion by the City's anti-beard policy." *Id.* at ¶123

Section 1983 provides a civil cause of action against anyone, who under color of state

---

[9]  As discussed above, § 1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 for suits against state actors in their official and individual capacities.

law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and

laws." 42 U.S.C. § 1983. To succeed on a claim under § 1983, a plaintiff must demonstrate two

elements: 1) that he was deprived of a right secured by the Constitution or laws of the United

States, and 2) that the deprivation was caused by a person acting under color of state law.

*Gibbons v. Bair Found.*, No. 1:04CV2018, 2005 WL 8171782, at *6 (N.D. Ohio Dec. 16, 2005)

(*citing Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001)).

> The equal protection clause of the Fourteenth Amendment prohibits states from
> "deny[ing] to any person within its jurisdiction the equal protection of the laws."
> U.S. Const. amend. XIV, § 1. "[T]his language embodies the general rule that
> States must treat like cases alike but may treat unlike cases accordingly." *Club
> Italia*, 470 F.3d at 298 (internal quotations omitted). The Supreme Court has
> stressed that "the purpose of the equal protection clause of the Fourteenth
> Amendment is to secure every person within the State's jurisdiction against
> intentional and arbitrary discrimination, whether occasioned by express terms of a
> statute or by its improper execution through duly constituted agents." *Vill. of
> Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060
> (2000).
>
> To prevail on an equal protection claim "a plaintiff must adequately plead that the
> government treated the plaintiff 'disparately as compared to similarly situated
> persons and that such disparate treatment either burdens a fundamental right,
> targets a suspect class, or has no rational basis.' " *Ctr. For Bio–Ethical Reform*,
> 648 F.3d at 379 (*quoting FlagClub Italia*, 470 F.3d at 299).

*Ziss Bros. Const. Co., Inc. v. City of Indep.*, 439 Fed. App'x 467, 475 (6th Cir. 2011); *see also*

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993).

### 1. Statute of Limitations

The City Defendants argue that any § 1983 claims reaching further back than December

23, 2020, are time-barred, because Plaintiff did not file suit until December 3, 2022, and a two-

year statute of limitations applies to § 1983 cases. (R. 22-1, PageID# 488). Therefore, the City

Defendants assert all the actions that allegedly occurred while Plaintiff was at the police

academy are time-barred. *Id*. Plaintiff's opposition brief does not explicitly challenge this

assertion, and asserts that "[t]he events of Mr. Ali's equal protection claims occurred after December 23, 2020." R. 33, PageID#: 787.

"[F]or § 1983 actions brought in Ohio, [courts] have applied the state's two-year statute of limitations for personal injury actions." *3799 Mill Run Partners, LLC v. City of Hilliard, Ohio*, 839 Fed. App'x 948, 950 (6th Cir. 2020) (*citing Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855-56 (6th Cir. 2003) (*citing* Ohio Rev. Code § 2305.10); *accord Mahvi v. Geauga Cnty.*, No. 1:24-CV-1098, 2025 WL 1532492, at *3 (N.D. Ohio May 29, 2025) (two-year statute of limitations applies to § 1983 cases).

The Court finds Plaintiff's § 1983 action is subject to dismissal to the extent it is based on any actions occurring prior to December 23, 2020.

## 2. Lack of a Comparator

The City Defendants argue they are entitled to judgment on the pleadings with respect to Plaintiff's § 1983 claim in Count Six, because Plaintiff failed to plausibly plead a similarly situated employee as required by the Equal Protection Clause in the employment context. (R. 22-1, PageID# 488).

"As th[e] [Sixth] Circuit has explained, a valid equal-protection claim requires showing that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (internal quotes omitted) (*citing Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). "To succeed on a § 1983 claim of [race discrimination] against a public employer for an equal protection violation, the plaintiff must show that the employer made an adverse employment decision 'with a discriminatory intent and purpose.'" *Sutherland v.*

20

*Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (*citing Boger v. Wayne County*, 950 F.2d 316, 324–25 (6th Cir. 1991)).

In his opposition brief, Plaintiff counters that "[he] states in his Complaint that he 'was treated differently than other, similarly situated non-Muslim officers in the CPD . . .' " (R. 33, PageID# 785-86, citing the Amended Complaint, R. 19, PageID# 411, at ¶123). This is woefully insufficient and amounts to nothing more than a legal conclusion.

Plaintiff's conclusory allegations are even more perfunctory than those alleged by the plaintiff in *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *7 (6th Cir. Aug. 18, 2022). Therein, the plaintiff alleged as follows: (1) the defendant police officers, all of whom were white, subjected the decedent, who was Black, to unequal treatment under the law when they seized and transported her 'out of our City' to the "mostly black populated City of Detroit;" (2) the defendant police officers were predisposed to treat black people differently from similarly situated white people and/or were trained, instructed, and expected to do so; (3) had the decedent been white, the defendant police officers would not have treated her in the manner described above; (4) had the decedent been a similarly situated white citizen, the defendant police officers would not have taken her into custody, transported her against her will during the night to the City of Detroit where she did not live along with an intoxicated black male; and (5) she was abandoned alone with said intoxicated male. *Reynolds*, 2022 WL 3500191 at *7.

The district court in *Reynolds* had concluded that the complaint's above allegations failed adequately to allege an equal protection claim because the allegations did not identify a similarly situated Caucasian person or a case comparable to decedent's case, and the Court of Appeals agreed. *Id*. The Sixth Circuit characterized the above assertions and conclusory allegations that were not entitled to the assumption of truth per *Iqbal*. *Id*. The Sixth Circuit Court of Appeals

explained that pleadings are "implausible" where they do "not provide necessary details that identified a similarly situated individual or organization … that did not receive the same treatment from the government as did the plaintiffs." *Id*. (*citing Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379-80 (6th Cir. 2011)). The *Reynolds* court found the plaintiff's claims failed because it did not identify "anyone similarly situated to Reynolds who received more favorable treatment. Conclusory allegations that a hypothetical Caucasian comparator would have received more favorable treatment are not entitled to an assumption of truth. *Iqbal* and *Twombly*'s pleading standards require more." *Id*. (*citing Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009); *see also Mall v. Educ. Serv. Ctr. of Cent. Ohio*, No. 2:19-CV-4795, 2020 WL 3173149, at *6 (S.D. Ohio June 15, 2020) (viewing a plaintiff's allegations in the light most favorable to him, he failed to allege any facts that he was treated differently than similarly situated employees where the complaint relied upon boilerplate statements that defendants burdened a fundamental right or targeted him based on a suspect class).

In the case at bar, Plaintiff's allegations are even more threadbare and conclusory. The Amended Complaint does not allege that anyone else was allowed to flout the so-called "anti-beard" policy. It is further bereft of any allegations that members of another religious group had requested a religious-based exemption of a similar magnitude that had been granted. Plaintiff's opposition asserts that discovery is needed to ascertain whether a non-Muslim employee received a religious accommodation. (R. 33, PageID# 786). The same fishing expedition argument was rejected in *Reynolds*. There, the court rejected the plaintiff's arguments that it should be "provided an opportunity to engage in discovery to find a similarly situated Caucasian comparator" and that the Court "should not require more specific allegations because that would impose too heavy an evidentiary burden at the pleading stage." *Reynolds*, 2022 WL 3500191 at

22

*8. The Sixth Circuit also rejected these arguments, noting that discovery was not necessary, and that plaintiff may "have been able to seek public records" before filing suit. *Id.*

For the foregoing reasons, the City Defendants' motion for judgment on the pleadings with respect to Count Six is granted.

**E.      State-Law Claims**

This matter was removed to this Court from the Cuyahoga County Court of Common Pleas, Ohio. (R. 1). With all the federal law claims dismissed, the pertinent issue is whether this Court should continue to exercise supplemental jurisdiction after it has disposed of all claims over which it had original jurisdiction. The City Defendants request that this Court decline to exercise supplemental jurisdiction. (R. 22-1, PageID# 492).

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim...if...the district court has dismissed all claims over which it has original jurisdiction." "Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well." *Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir. 1990); *accord Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims ...."); *Lanzer v. City of Louisville Ohio*, No. 5:13CV2251, 2014 U.S. Dist. LEXIS 127545, 2014 WL 4441481, at *7 (N.D. Ohio Sept. 9, 2014) (same).

In deciding whether to exercise its supplemental jurisdiction, a court should consider such factors as comity, judicial economy, convenience and fairness, as well as the avoidance of unnecessarily deciding questions of state law. *Pinney Dock & Transp. Co, v. Penn Central*

23

*Corp.*, 196 F.3d 617, 620-21 (6th Cir. 1999). In this case, the following factors support declining to exercise supplemental jurisdiction: (1) the federal claims have been disposed of; and (2) in so doing, this Court has found it unnecessary to address numerous contested issues that may bear upon the remaining state law claims, such as the applicability of Ohio's newly amended exhaustion requirements. Therefore, this Court concludes, after balancing the factors relevant to exercising its supplemental jurisdiction, that the remaining state law claims are REMANDED to state court.

**F.      Other Matters**

**1.  Motion for leave to file second amended complaint**

As indicated above, Defendants filed motions for judgment on the pleadings with respect to the original Complaint, raising many of the same arguments raised in the current motions for judgment on the pleadings. (R. 15 & 16). Approximately a month later, Plaintiff filed his Amended Complaint (R. 19), and the Court denied the initial motions for judgment on the pleadings without prejudice as moot. After the currently pending motions for judgment on the pleadings were filed, Plaintiff again sought leave to amend the complaint. (R. 26).

Rule 15 provides that a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The liberal amendment policy embodied in Rule 15(a)(2), however, "is not without limits." *DeCrane v. Eckart*, No. 1:16CV2647, 2018 WL 916520 at *1 (N.D. Ohio Feb. 16, 2018) (Boyko, J.). "But a court need not grant a motion to amend when the reason for amendment is

24

improper, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737-38 (6th Cir. 2022) (citations omitted)), *cert. denied*, 143 S. Ct. 527, 214 L. Ed. 2d 302 (2022). The Court finds that allowing Plaintiff a third opportunity excessive, especially under the circumstances of this case. Prior to filing the Amended Complaint, Plaintiff already knew the arguments raised by Defendants in their previous motions and had ample opportunity to cure any deficiencies. Therefore, Plaintiffs stated reasons for requesting another amendment—to better respond to the arguments raised in Defendants' motions for judgment on the pleadings—should have been addressed and cured through the first Amended Complaint. The Court need not grant a motion to amend to cure deficiencies by amendments previously allowed.

The motion for leave to file a second amended complaint (R. 26) is DENIED.

### 2.  Motion for leave to file surreply

Plaintiff filed a motion for leave to file a short response to Defendants' reply briefs, in support of his opposition to the motions for judgment on the pleadings. (R. 36). Defendants opposed. (R. 37 & 38). Despite the Court previously granting Plaintiff's motion for leave to exceed page limitations and to file an opposition brief sixty-pages in length, the Court allows what is tantamount to the filing of a surreply. Plaintiff's motion for leave (R. 36) is GRANTED, the proposed response (R. 36-1) is deemed filed, and the Court has considered it.

### 3.  Motion to submit additional authority

Only two months after filing his surreply, Plaintiff filed a Motion for leave to Submit Additional Authority & Argument in Support of Opposition to Motions for Judgment on the Pleadings. (R. 39). Having reviewed Plaintiff's proposed filing, the Court notes that it contains

no new case law. The vast majority of the authority cited is more than ten years old and even the most recent decision from 2021 predates Plaintiff's opposition brief by two years. (R. 39-1). The authority and argument contained in the proposed filing could easily have been included in the original opposition brief or in the surreply the Court permitted. Therefore, Plaintiff's motion (R. 39) is DENIED.

### V.    Conclusion

Plaintiff's Amended Complaint asserts multiple state and federal causes of action. The City Defendants' Motion for Judgment on the Pleadings (R. 22) is GRANTED, as explained herein, with respect to the federal claims raised in Counts Three, Four, and Six only. The Court declines to rule on Defendant Kwan's motion (R. 23), as it involves only state law claims. As explained herein, Plaintiff's motion for leave to file a second amended complaint (R. 26) is DENIED; Plaintiff's motion for leave to file a surreply (R. 36) is GRANTED; and Plaintiff's motion for leave to file additional authority (R. 39) is DENIED.

The remaining claims in this case are purely under state law, and they are hereby REMANDED to the Cuyahoga County Court of Common Pleas for further proceedings.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 16, 2025